Nicholas A. Kurtz (SBN 232705)
nkurtz@dglegal.com
DUNLAP, GRUBB & WEAVER, PLLC
199 Liberty St., SW
Leesburg, Virginia 90210
Telephone: (703) 777-7319
Facsimile: (703) 777-3656

Attorneys for Plaintiff,
Jake Mandeville-Anthony

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JAKE MANDEVILLE-ANTHONY, an individual,<br><br>Plaintiff,<br><br>v.<br><br>THE WALT DISNEY COMPANY; WALT DISNEY PICTURES; DISNEY ENTERPRISES, INC.; PIXAR d/b/a PIXAR ANIMATION STUDIOS; and DOES 1 - 10, inclusive,<br><br>Defendants. | CASE NO.: CV 11-2137-VBF(JEMx)<br><br>Judge: Honorable Valerie Baker Fairbank<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY PRIOR TO RULE 26(F) CONFERENCE OR, IN THE ALTERNATIVE, FOR A HEARING ON SUCH A MOTION ON AN EXPEDITED BASIS**<br><br>[Notice of Motion and Motion; [Proposed] Order; Declaration of Nicholas A. Kurtz filed concurrently herewith]<br><br>Date:     June 6, 2011<br>Time:    1:30 p.m.<br>Hon. Valerie Baker Fairbank<br>312 N. Spring St., Courtroom 9<br>Los Angeles, California 90012 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendants' view of this case and Plaintiff's motion for expedited discovery skews far from reality. Defendants attempt to paint a picture of ultimate catastrophe should their film and script fall into the "wrong hands." Defendants also attempt to state that not even the secret script or storyline of "Cars 2" can be divulged unless it is in accordance with their marketing strategy.

What is conveniently missing from Defendants' opposition is the fact that Defendants' "Cars 2" is an animated film targeted to children. It is not a sophisticated suspense drama or thriller in the sense that the plot carries the movie. Especially when it comes to the screenplay/script, Defendants have not provided any substance to their concerns of commercial secrecy and threats of piracy. Defendants have not identified any black market for movie scripts, any history of pirating of movie scripts, or any conceivable motivation for anyone to steal and reproduce the script for public consumption.

Instead of explaining how a copy of their film would fall into the "wrong hands,"[1] Defendants attack Plaintiff's timing of his motion and the substance of Plaintiff's claims.[2] These arguments are mere smokescreens designed to distract

---

[1] Defendants seem to acknowledge that they have no reason to believe Plaintiff, Plaintiff's counsel, or the Court have any intention of copying, pirating, or otherwise distributing "Cars 2" to the public.

[2] Defendants continually insert remarks that Plaintiff's and Defendants' works are "completely dissimilar" and are "nothing alike." However, Defendants concede that their "Cars" works and Plaintiff's "Cars" both revolve around anthropomorphic car characters living in a world with no humans, a creative concept that Defendants themselves stated had never been done before. Compare Opposition at 3:11-13 with Complaint at ¶ 21. Additionally, if the works are that dissimilar, it seems Defendants would be eager to have Plaintiff and his counsel view "Cars 2" so that they could see the dissimilarity for themselves.

from the inevitable truth – there is no real threat that producing a copy of their film and screenplay/script to Plaintiff will result in any harm to Defendants. Therefore, the Court should order Defendants to Defendants to immediately produce the screenplay/script and an audio-visual copy of Defendants' "Cars 2."

## II. ARGUMENT

### A. Defendants have not refuted Plaintiff's need for the expedited discovery.

Defendants have not refuted that the requested discovery is necessary for Plaintiff to bring a preliminary injunction application. Further, Defendants have not refuted that the requested discovery is relevant and narrowly tailored for Plaintiff's needs. In fact, Defendants' offer to allow Plaintiff and his counsel to view "Cars 2" before its theatrical release concedes that Plaintiff has demonstrated an adequate need for the requested discovery.

### B. Defendants' last ditch offer and comments on Plaintiff's tactics are irrelevant.

As a last minute effort to make themselves appear accommodating, Defendants offered Plaintiff and his counsel an opportunity to view the film at Defendants' location and Plaintiff's expense. Defendants knew that Plaintiff's counsel is located thousands of miles away and that Plaintiff resides even farther away. Surely Defendants knew that such a proposal would be unacceptable.

Even if Plaintiff accepted Defendants' proposal, Defendants still do not explain how Plaintiff could submit any evidence regarding "Cars 2" in a preliminary injunction application. Apparently Defendants are suggesting that Plaintiff and his counsel would have to submit notes and sketches from "Cars 2"

based on their memory.[3] Even if Plaintiff and his counsel were able to do that, Defendants would undoubtedly argue that the characterization of "Cars 2" is not accurate.

Additionally, Defendants criticize Plaintiff for his choice of counsel, forum, and timing. Had Plaintiff filed in any other jurisdiction other than this one, Defendants would undoubtedly have made a motion to transfer venue. In the end, merely because Plaintiff chose this Court for this case does not somehow subject him to the whims of Defendants.[4]

Lastly, Defendants also state that it is inconsistent for Plaintiff to argue he needs access to "Cars 2" for a preliminary injunction application because Plaintiff alleged infringement of his works by "Cars 2" based on the publicly available information about the movie. That defies logic. Defendants know that a higher standard applies for Plaintiff to prevail on a preliminary injunction application than adequately alleging a claim for infringement in a complaint on information and belief.

In fact, Defendants are quick to point out the standard on a preliminary injunction motion and criticize Plaintiff's authority on the issue. Defendants contend that "Plaintiff's discussion of a 'presumption' of irreparable harm in the

---

[3] Defendants state that Plaintiff and his counsel could view "Cars 2" as many times as they want. However, viewing the film and screenplay/script a few times, at Defendants' location, with Defendants' personnel peering over Plaintiff and his counsel's shoulders, and without any ability to document any part of the film, does not provide Plaintiff and his counsel the opportunity to adequately review the works for substantial similarities and present that evidence to the Court.

[4] Defendants' counsel's statements about the details of the U.K. action are not only irrelevant but are legally questionable, as the proceedings of that case are sealed pursuant to U.K. law. Notwithstanding, contrary to Defendants' implications, the U.K. action was not dismissed by the court on the merits. Rather, the parties consented to dismissal as part of a settlement.

1  preliminary injunction context is premised on outdated authority." Opp. at 6:19-20
2  (citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7129 S. Ct.
3  365 (2008)). However, Defendants' argument on this issue is not completely
4  accurate.
5      In at least one instance, the Ninth Circuit has reaffirmed and continued to
6  presume irreparable harm upon a showing of a likelihood of success on the merits.
7  See *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877
8  (9th Cir. 2009) (stating that irreparable injury may be presumed from a showing of
9  likelihood of success on the merits in a trademark infringement case, post *Winter*).
10 Further, on at least one occasion, this Court has reaffirmed and continued to
11 presume irreparable harm upon a showing of a likelihood of success on the merits,
12 post *Winter*, in a copyright action. See *Summit Entertainment, LLC v. Beckett
13 Media, LLC*, 2010 WL 147958 *4 (C.D. Cal. January 12, 2010) (Hon. Philip S.
14 Gutierrez) ("In copyright and trademark infringement actions, irreparable injury is
15 presumed upon a showing of likelihood of success on the merits.").
16     Defendants state that "Plaintiff's Motion contains a long discussion of the
17 harm he might face if a preliminary injunction motion were denied." Opposition at
18 6:16-17. This inaccurately summarizes Plaintiff's motion and is again misleading.
19 The harm Plaintiff argued was not whether a preliminary injunction motion would
20 ultimately be granted or denied. Rather, the harm would be to Plaintiff's ability to
21 bring a preliminary injunction application at all.
22     Further, Defendants claim that such a discussion "has nothing to do with this
23 Motion and any harm caused by not immediately having his own copy of *Cars 2*."
24 Opposition at 6:17-19. Nothing could be further from the truth. Because Plaintiff
25 cannot bring a preliminary injunction motion without it, Plaintiff has an absolute
26 need for a copy of "Cars 2." As stated in the motion, "[w]ithout the discovery,
27 Plaintiff will be denied that opportunity forever, potentially risking the irreparable
28 harm that a preliminary injunction is intended to prevent." Motion at 6:21-7:2.

C. <u>Defendants have not shown any actual prejudice.</u>

Defendants' opposition demonstrates that Defendants will not suffer actual prejudice by producing "Cars 2" to Plaintiff, only a feared prejudice. Defendants use the terms "threatens severe and irreparable harm" (Opp. at 7:9) and "serious threat of irreparable harm" (Opp. at 8:17). That is not actual prejudice.

Despite Defendants' catastrophic outlook of what would happen if a copy of "Cars 2" got into the "wrong hands," Defendants simply have not articulated how the likelihood of this type of "accident" exists or increases by giving Plaintiff a copy of "Cars 2" before its theatrical release. Further, Defendants have failed to address how "technological safeguards and anti-piracy measures," which they conceded already exist, would not alleviate Defendants' concerns.[5] [Doc. No. 11 at 3:8-11]

In regards to the screenplay/script, Defendants have not provided any substance to their concerns of commercial secrecy and threats of piracy. Defendants have not identified any black market for movie scripts, any history of pirating of movie scripts, or any conceivable motivation for anyone to steal and reproduce the script for public consumption.

The only legal authority cited by Defendants was *Kimble v. Rock*, 2009 WL 3248208 (C.D. Cal. Oct. 8, 2009). However, there the issue was narrower – whether the plaintiff's *expert* could have access to a film before its national theatrical release. See id. at *4.[6] In fact, there the Court granted the plaintiff's request for expedited discovery even though it had already done an analysis of

---

[5] Again, Defendants do not explain how "technological safeguards and anti-piracy measures" would differ between now and after "Cars 2" is released publicly.

[6] There, the plaintiff only asked that her expert be given access to the film, as she and her counsel had already viewed the film at issue. See *Kimble v. Rock*, Case 2:09-cv-07249-DSF-E, Doc. No. 20 at 25:8-12.

substantial similarities and found that the plaintiff was unlikely to show she was entitled to a preliminary injunction. Id. at *4.

On the other hand, it is quite telling that Defendants did not even address the central holding of *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273 (N.D. Cal. 2002). There, the Court dealt with commercially sensitive and proprietary documents of the defendants, such as "technical specifications, schematics, maintenance manuals, user or operating manuals." 208 F.R.D. at 276. The court granted plaintiff's request for expedited discovery without limitation and on a basis much less necessary than here – "substantially contribute to moving th[e] case forward." *Semitool*, 208 F.R.D. at 277.

Overall, Defendants' concerns are not based on any reality in this situation. Rather, they are unsubstantiated speculation. Therefore, Plaintiff respectfully requests that the Court order Defendants to immediately produce the screenplay/script and an audio-visual copy of Defendants' "Cars 2."

### D. Defendants' argument that Plaintiff's counsel did not meet and confer in good faith is unsupported.

Defendants' claim that Plaintiff's counsel did not meet and confer in good faith again conveniently gives only part of the story. While they gloss over the events, Defendants themselves show that their counsel and Plaintiff's counsel had a number of conversations about the central issue of this motion – whether Defendants would produce a copy of "Cars 2" before its theatrical release.

Defendants' opposition even states that Plaintiff's counsel requested a copy of "Cars 2" the week prior to Plaintiff filing his motion. Opposition at 4:9-11. Amazingly absent from Defendants' retelling of counsel's conversations is any mention of Defendants' motion for an extension, which was denied by the Court. Defendants' motion was based on the same issue as Plaintiff's motion – Defendants' willingness to produce a copy of "Cars 2" before its theatrical release.

1   This is most telling in that Defendants' motion for extension never
2   mentioned the possibility that Plaintiff could view "Cars 2" before its theatrical
3   release.  Had Defendants truly seen that offer as a possible resolution of the issues,
4   they would have presented it at the outset.  The truth is that Defendants only
5   presented the offer after Plaintiff was forced to file his motion.
6   Also absent from Defendants' opposition is any explanation of Defendants'
7   counsel's actions.  Again, the Declaration of David R. Singer in support of
8   Defendants' application for extension (Doc. No. 11 at pp. 6-10) states that at the
9   time of filing Defendants' application, Defendants' counsel had not received a
10  responsive email from Plaintiff's counsel.  [Id. at 8:2-3]  While it is unclear what
11  time Defendants filed their application, it should be noted that Plaintiff's counsel
12  sent a responsive email at 3:05 p.m. CST on May 4, 2011 (the day Defendants filed
13  their application), and Defendants' counsel responded shortly thereafter: "Thanks
14  for getting back to me. I will call you tomorrow to discuss."  Doc. No. 14-2 (Kurtz
15  Decl.), ¶ 5, Ex. 1.  Either (1) Defendants had not yet filed their application, and
16  consequently the Declaration of David R. Singer is inaccurate, or (2) Defendants
17  had filed their application, and consequently Defendants' counsel intentionally
18  failed to mention the fact.
19  Lastly, Defendants' counsel cannot truly be surprised that Plaintiff's counsel
20  was busy after having received Defendants' application for an extension.[7]
21  Defendants' application was presented in an *ex parte* manner, requiring immediate

---

[7] Defendants point to the fact that Plaintiff's motion was filed a few hours after Plaintiff's counsel stated he was busy.  Again, because nearly identical issues were presented in opposing Defendants' application and in making Plaintiff's motion, Plaintiff's counsel was able to use similar arguments in Plaintiff's motion as in opposition to Defendants' application.  Further, instead of proceeding on an *ex parte* basis like Defendants, Plaintiff has proceed according to the Court's normal briefing and hearing schedule, obviously necessitating the prompt filing of Plaintiff's motion.

attention by Plaintiff's counsel.  Further, Defendants' counsel could have presented Defendants' proposal in a simple email, but chose not to.

Overall, it is undisputed that the parties' counsel had a number of conversations about the issue that is the subject of Plaintiff's motion.  By making their application, Defendants necessitated Plaintiff's motion.  Therefore, it is disingenuous for Defendants to claim Plaintiff's counsel did not meet and confer in good faith.

### III.  CONCLUSION

For all of the foregoing reasons, the Court should order Defendants to produce immediately the screenplay/script and an audio-visual copy of Defendants' "Cars 2."  In the alternative, the Court should order that Defendants at least produce the screenplay/script before the theatrical release of the film.  Defendants have not shown any real, actualized prejudice they would incur if they were forced to produce the film.  On the other hand, Plaintiff has shown a justified need for the film and actual harm if he does not receive a copy.

DATED: May 23, 2011                    DUNLAP, GRUBB & WEAVER, PLLC


                                       By:  /s/ Nick Kurtz
                                            Nicholas A. Kurtz
                                            Attorneys for Plaintiff,
                                            Jake Mandeville-Anthony

# **CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2011, I electronically filed the foregoing REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY PRIOR TO RULE 26(F) CONFERENCE OR, IN THE ALTERNATIVE, FOR A HEARING ON SUCH A MOTION ON AN EXPEDITED BASIS with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

David R. Singer
Hogan Lovells US LLP
david.singer@hoganlovells.com

Sanford M. Litvack
Hogan Lovells US LLP
sandy.litvack@hoganlovells.com

*Attorneys for Defendants*
*The Walt Disney Company,*
*Walt Disney Pictures,*
*Disney Enterprises, Inc., and*
*Pixar d/b/a Pixar Animation Studios*

                                              /s/ Nick Kurtz
                                              Nicholas A. Kurtz