David R. Singer (State Bar No. 204699)
HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
david.singer@hoganlovells.com

Sanford M. Litvack (State Bar No. 177721)
HOGAN LOVELLS US LLP
875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
sandy.litvack@hoganlovells.com

Attorneys for Defendants
THE WALT DISNEY COMPANY,
WALT DISNEY PICTURES,
DISNEY ENTERPRISES, INC.
and PIXAR

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| JAKE MANDEVILLE-ANTHONY, an individual,<br><br>            Plaintiff,<br><br>     v.<br><br>THE WALT DISNEY COMPANY, WALT DISNEY PICTURES, DISNEY ENTERPRISES, INC., PIXAR d/b/a PIXAR ANIMATION STUDIOS; and DOES 1-10, inclusive,<br><br>            Defendants. | Case No. CV 11-2137 VBF (JEMx)<br><br>Complaint Filed: March 14, 2011<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:      August 1, 2011<br>Time:      1:30 p.m.<br>Location:  Courtroom 9<br><br>Hon. Valerie Baker Fairbank |

## I. INTRODUCTION

Defendants' motion is based on a simple, straightforward proposition: relying solely on the contents of the works at issue, it is clear, as a matter of law, that Defendants' *CARS* works are not at all similar, let alone substantially similar, to Plaintiff's works. That is the totality of Defendants' request to dismiss the copyright claim. Rather than meeting that key issue head-on, Plaintiff has sought to dodge it by (a) submitting an oversized brief that relies on an improperly tendered "expert" declaration;[1] and (b) attempting to rewrite his works as he goes along, all in a vain effort to create an illusion of substantial similarity. While the tactic is understandable, it is futile. The Court's comparison of the works themselves will put to rest – finally and unequivocally – any effort to obscure the stark differences between them.

Nor can Plaintiff save his time-barred contract claim. A breach of contract claim accrues at the time of the alleged breach. In fact, the Ninth Circuit has expressly held that idea submission claims, such as this one, accrue no later than the date the defendant's motion picture is first released theatrically. Here, Plaintiff alleges that Defendants promised to pay him and give him motion picture credit in exchange for his supposedly novel idea of an anthropomorphic car story. Defendants' *CARS* motion picture, a story about anthropomorphic cars, was released worldwide in June 2006, and Plaintiff was never paid and received no credit. Given that alleged breach, Plaintiff had two years from then to file a lawsuit. His decision to wait nearly five years to do so is fatal to his claim.

---

[1] Defendants have concurrently filed objections to the Hunter Declaration. As set forth therein, the Court's review of a Rule 12(c) motion is limited to the complaint and relevant works incorporated by reference. *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197, fn.1 (9th Cir. 1998). Therefore, the Court should strike and disregard the Hunter Declaration and all portions of the opposition that rely on it. *See Jackson v. Cate*, No. CV 09-01326-PSG DTB, 2010 WL 4668311, *1 (C.D. Cal. Oct. 7, 2010). The Court also should strike and disregard pages 26 through 36 of the opposition because it exceeds the 25-page limit mandated by Local Rule 11-6 and the Court's Standing Order.

For these reasons, Plaintiff's copyright infringement and breach of implied contract claims should be dismissed with prejudice.

## II. THE ONLY COPYRIGHT ISSUE PRESENTED BY THIS MOTION IS SUBSTANTIAL SIMILARITY, WHICH IS DETERMINED BY A COMPARISON OF THE WORKS

The copyright issue before the Court is whether Defendants' *CARS* works are substantially similar to Plaintiff's *Cookie & Co.* ("*Cookie*") and *Cars/Auto-Excess/Cars Chaos* ("*Cars Chaos*"). As the courts of this Circuit have repeatedly held, this issue may properly be decided as a matter of law at the motion to dismiss stage, before any discovery commences, by simply comparing the works at issue.[2] Plaintiff's suggestion that this Court has "cast some doubt" on this well-settled law is plainly wrong. The case he cites, *Capcom Co., Ltd. v. MKR Group, Inc.*, No. C08-0904 RS, 2008 WL 4661479 (N.D. Cal. Oct. 20, 2008), <u>granted</u> a motion to dismiss on substantial similarity grounds, and further noted that "courts have <u>increasingly</u> found the issue of substantial similarity subject to adjudication on a motion to dismiss in the appropriate case." *Id.* at *5 (emphasis added). Thus, though Plaintiff may wish it were otherwise, the issue is ripe for adjudication now.

In an attempt to avoid dismissal, Plaintiff goes to great lengths to concoct possible similarities between the parties' works. But, as set forth in Defendants' motion, the purported similarities he identifies – individually and collectively – are all trivial, non-protectable ideas and concepts, such as characters "interacting" (Opp. at 11), romance (*id.* at 12), anthropomorphic cars (*id.* at 15), and a scene where a host serves food to guests (*id.* at 23, n.12). At times, Plaintiff's random list of

---

[2] *See*, *e.g.*, *Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945); *Cory Van Rijn, Inc. v. Cal. Raisin Advisory Bd.*, 697 F. Supp. 1136, 1145 (E.D. Cal. 1987) (granting motion to dismiss based on lack of substantial similarity); *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1130 (C.D. Cal. 2007) ("'non-infringement can be determined on a motion to dismiss'"); *Identity Arts v. Best Buy Enter. Svcs. Inc.*, 2007 WL 1149155, *5 (N.D. Cal. Apr. 18, 2007) (substantial similarity may be decided on motion for judgment on the pleadings); *Rosenfeld v. Twentieth Century Fox Film*, 2008 WL 4381575, at *6 (C.D. Cal. Sept. 25, 2008) (substantial similarity may be decided on a motion to dismiss); *Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108, 1113 (N.D. Cal. 2010) (same); *Thomas v. Walt Disney Co.*, 2008 WL 425647, *4 (N.D. Cal. Feb. 14, 2008) (same).

alleged similarities is even difficult to follow.[3] For example, on page 19 he claims that Defendants' Lightning McQueen character is substantially similar to Plaintiff's James Aston-Martin character; but on page 22, he argues that Defendants' Finn McMissile character is a copy of James Aston-Martin.[4] But this is all besides the point because characterizations of the works by the parties or the lawyers are irrelevant to the pending motion. The content of each of the works is presently before the Court and, therefore, ripe for comparison to determine similarity. *See Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1130 (C.D. Cal. 2007) (court determines substantial similarity by examining the works themselves); *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) ("the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings") (citation omitted). While it is tempting, as advocates, to challenge and rebut each and every one of Plaintiff's distortions, it would serve no useful purpose. The works speak for themselves and, once reviewed by the Court, will present dispositive evidence for the pending motion.

Finally, Plaintiff claims that Defendants "conveniently failed to address the issue of access." This, of course, was not an oversight at all; for purposes of this Motion only Defendants are willing to accept Plaintiff's access allegations. However, this does not help him because even if the Court were to apply a lower standard of proof of substantial similarity under an inverse ratio theory, as a matter of law the works are still not substantially similar. In short, under any standard, the

---

[3] A plaintiff's "compilation of random similarities scattered throughout the works is inherently subjective and unreliable." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 825 (9th Cir. 2002) (internal quotes and cites omitted).

[4] Plaintiff certainly has no right claim a monopoly over car characters that are designed based on, or named after, the designs and names of real-life famous third-party cars. Thus, for example, there can be no objection to a car character based on the classic 1950's Ford Thunderbird or a character designed to look like a 1920's Stanley Steamer car with the obvious name "Stanley". *Aurora World, Inc. v. Ty Inc.*, 719 F. Supp. 2d 1115, 1137 (C.D. Cal. 2009) ("[copyright] protection extends only to those components of a work that are original to the author.") (cite omitted).

parties' works are completely dissimilar. *See Identity Arts*, 2007 WL 1149155, at *18 (granting motion for judgment on the pleadings and holding that "no amount of proof of access will suffice to show copying if there are no similarities").

### III. PLAINTIFF CANNOT REVIVE HIS TIME-BARRED IMPLIED CONTRACT CLAIM

It is hornbook law that "[a] cause of action for breach of contract ordinarily accrues at the time of breach, and the statute begins to run at that time regardless of whether any damage is apparent or whether the injured party is aware of his or her right to sue." 3 Witkin, Cal. Proc. 5th (2008) CH. 4 § 520; *April Enterprises, Inc. v. KTTV*, 147 Cal. App. 3d 805, 832 (1983) (affirming the "general California rule that contract causes of action accrue at the date of injury"). Although the California Court of Appeal has recognized a narrow exception where the breach was "committed in secret" and not "reasonably discoverable by plaintiffs until a future time," such cases are "unusual." *April*, 147 Cal. App. 3d at 832 (contract claim accrued at time of plaintiff's discovery that defendant secretly erased videotapes in violation of parties' contract, rather than the date of erasure, because "the unusual facts of this case call for an exception to the general rule"). The Ninth Circuit has followed suit, holding that accrual of a contract claim "ordinarily commences at the time of injury" and that tolling of the limitations period based on plaintiff's "delayed discovery" is limited "to those cases where the factual predicate for the plaintiff's injuries was concealed or misrepresented." *Matsumoto v. Republic Ins. Co.*, 792 F.2d 869, 872 (9th Cir. 1986) (italics omitted).

More specifically, in the context of idea submission cases (*i.e.*, where a plaintiff claims a studio used and disclosed his idea without compensation or credit), the Ninth Circuit has held that contract claims accrue no later than when the motion picture is released in theatres. *Kourtis v. Cameron*, 419 F.3d 989 (9th Cir. 2005), *abrogated on other grounds*, *Taylor v. Sturgel*, 533 U.S. 880 (2008). In *Kourtis*, the plaintiffs alleged that they submitted their film treatment titled *The Minotaur* to the defendants, who then impliedly promised to compensate them and give them credit

\\\LA - 022031/000020 - 488098 v5                          4

if the defendants used or disclosed the plaintiffs' ideas. *Id.* at 993-994. More than two years after the defendant released the motion picture *Terminator II*, plaintiffs sued claiming, among other things, that defendant breached an implied contract and undertaking of confidence. Affirming the dismissal of plaintiffs' claims as time-barred, the Ninth Circuit held that "<u>[t]he latest date upon which their breach-of-contract claims could have accrued is 1991, when [defendant] released *Terminator II*</u>." *Id.* at 1000 (emphasis added).

Here, as in *Kourtis*, Plaintiff claims there was an implied promise to compensate him for his "novel ideas" and that Defendants breached when they used those ideas in the "development and production" of *CARS*, released "worldwide for theatrical exploitation" in June 2006. Cplt. at ¶¶ 23, 40. Applying the California and Ninth Circuit precedent cited above, Plaintiff's breach of contract claim accrued no later than June 2006, and the two-year deadline for him to sue was <u>June 2008</u> pursuant to Code Civ. Proc. § 339(1). Despite this, Plaintiff decided to sit on his rights for nearly five years, waiting until <u>March 2011</u> before filing suit. That was too late; his contract claim is time barred.

Cornered, Plaintiff relies on an unpublished district court decision, *Green v. Schwarzenegger*, 1995 WL 874191 (C.D. Cal. July 12, 1995), where the court held that the plaintiff's claim did not arise until he saw the motion picture at issue. Not only is there no discussion of the California authorities cited above in *Green*, but the district court's unpublished holding – which also related to *Terminator II* – is directly at odds with the Ninth Circuit's subsequent decision in *Kourtis* concerning virtually identical claims over the same motion picture. Thus, even if *Green* were on point (and it is not)[5], to the extent it conflicts with *Kourtis* it is not good law. *U.S. v.*

---

[5] Where a plaintiff attempts to invoke the delayed discovery exception, the burden is on the plaintiff to "specifically plead facts" demonstrating that the exception applies. *Camsi IV v. Hunter Tech. Corp.*, 230 Cal. App. 3d 1525, 1536-37 (1991) (rejecting delayed discovery argument and dismissing time-barred claim on motion to dismiss). Here, Plaintiff has not and cannot plead any facts to save his claims from being time-barred. It would defy common sense to allege that the

1  *AMC Ent., Inc.*, 549 F.3d 760, 771 (9th Cir. 2008) ("when the Ninth Circuit or any
2  of its coequal circuit courts issue an opinion, the pronouncements become the law of
3  that geographical area.")

4   Next, Plaintiff argues that the parties' implied contract "did not have any
5  expiration date on it" for the time of Defendants' performance and, therefore, the
6  statute of limitations does not begin to run until Plaintiff decides to declare a breach.
7  *See* Opp. at 34.[6] In other words, there effectively is no statute of limitations on his
8  contract claim and he could have waited fifty years, if he chose, before bringing his
9  lawsuit. As one district court politely put it, "[t]his is not the law in California" and
10 such a rule "would lead to absurd and inequitable results." *Boon Rawd Tr. Int'l Co.,*
11 *Ltd. v. Paleewong Tr. Co., Inc.*, 688 F. Supp. 2d 940, 949 (N.D. Cal. 2010).

12   In any event, even if one were to indulge in Plaintiff's fantasy, his own
13 allegations put the matter to rest. According to him, the implied contract between
14 the parties actually did contain a deadline for Defendants to perform. Defendants
15 supposedly promised Plaintiff he would receive "appropriate credit for any
16 production based on Plaintiff's ideas . . . such as 'created by.'" Cplt. at ¶¶ 38, 40. It
17 is undisputed that when *CARS* was released in 2006 there was no mention of
18 Plaintiff in the credits.[7] For that reason alone, Plaintiff's contract claim accrued in
19 June 2006.

20   Finally, citing no law, Plaintiff argues that Defendants' release of *CARS 2*
21 somehow restarted the clock on the statute of limitations. Opp. at 33. This
22 argument cannot stand either because Plaintiff's complaint alleges a single,

---

release of the major animated motion picture *CARS* by Disney and Pixar was a "secret" breach of the parties' contract. *April*, 147 Cal. App. 3d at 832.

[6] The cases cited by Plaintiff are far afield and have no bearing on the facts of this case. For example, he relies on *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 489 (1996), where the court held that a wrongful employment termination claim accrued at the time of termination, not when the employer threatened to terminate the employee. The court's primary concern, however, was ensuring that an employee was not penalized for affording his employer the opportunity to retract an empty threat before actual termination. *Id.* at 489.

[7] A DVD copy of *CARS* was lodged with the Court concurrently with Defendants' motion.

indivisible contract: the supposed agreement to compensate Plaintiff and give him credit for use of his "novel ideas related to 'Cars.'" Cplt. ¶ 38. According to Plaintiff, Defendants breached that agreement when they used his "novel ideas" in "the development and production" of the CARS works. Cptl. ¶ 40. His "critical" idea – anthropomorphic cars living in a world without humans – was "appropriated" in CARS and, at that point, according to Plaintiff's allegations, the parties' only agreement was fully breached. The attempt to reset the clock based on continuing, successive, or separate breaches must fail. *Kourtis*, 419 F.3d at 1000-01 (rejecting plaintiff's "attempt to extend the statute of limitations based upon a continuing violation theory").

## IV. CONCLUSION

In sum, with respect to Plaintiff's copyright claim, there is no dispute that (1) the works are properly before the Court, and (2) the content of the works control the Court's analysis of substantial similarity. A straightforward reading of *Cookie* and *Cars Chaos*, and viewing of *CARS*, *CARS Toon*, and *CARS 2*, will confirm there is no substantial similarity as a matter of law. With respect to Plaintiff's implied contract claim, he has failed to allege – and cannot truthfully allege – any viable exception to the rule that his claim accrued in June 2006 when *CARS* was first released theatrically. Therefore, the claim is time-barred and should be dismissed with prejudice.

Date: July 18, 2011            HOGAN LOVELLS US LLP

By:             /s/
   David R. Singer

Attorneys for Defendants
THE WALT DISNEY COMPANY, WALT DISNEY PICTURES, DISNEY ENTERPRISES, INC. and PIXAR